IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

KATHERINE JACOBS,          )
                               )

    Plaintiff,            )
                               )

v.                            )     Case No. 4:18-cv-00024
                               )

JOHNSON STORAGE &        )     **JURY TRIAL DEMANDED**
MOVING CO. HOLDINGS, L.L.C.,  )
a Colorado limited liability company,  )
                               )

Serve at:                )
                               )

Corporation Service Company   )
Registered Agent          )
1560 Broadway, Suite 2090,    )
Denver, CO 80202         )
                               )

    Defendant.         )

## COMPLAINT

COMES NOW Plaintiff Katherine Jacobs ("Plaintiff" or "Jacobs"), by and through undersigned counsel, and for her Complaint against Defendant Johnson Storage & Moving Co. Holdings, L.L.C. ("Defendant" or "Johnson Storage"), states as follows:

## JURISDICTION AND VENUE

1.      The Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ("FLSA"), authorizes court actions by private parties to recover damages for violation of wage and hour and anti-retaliation provisions contained within the FLSA. Jurisdiction over Plaintiff's FLSA claims is based upon 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

2.      Missouri law authorizes court actions by private parties to recover damages for violation of the Missouri Wage and Hour Law ("MWHL"). § 290.500 RSMo. *et seq.* Jurisdiction over Plaintiff's state law claims is based on 28 U.S.C. § 1367 and § 290.527 RSMo, in that they

are so related to the FLSA claims that they form part of the same case or controversy under Article III of the United States Constitution.

3.      Venue in this District is proper under 28 U.S.C. § 1391(b), because a substantial part of the events giving rise to the claims occurred in this District.

## PARTIES

4.      Jacobs is an adult citizen of the United States who resides in O'Fallon, Missouri and who was employed by Defendant under the job title "ITGBL Coordinator/Analyst" from at least March 13, 2017 through August 17, 2017.

5.      Johnson Storage  is a Colorado limited liability company with its principal place of business located in Centennial, Colorado.

6.      Johnson Storage is an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s) in that Defendant had, at all relevant times, two or more employees handling, selling, or otherwise working on goods or materials that have been moved in, or produced for, commerce and Defendant had annual gross volume of sales made or business done of at least $500,000.

## COMMON FACTUAL ALLEGATIONS

7.      Defendant Johnson Storage is one of the founding agent(s) and/or owner(s) of UniGroup, Inc. ("UniGroup"), a Missouri corporation with its principal place of business located at One United Drive, Fenton, Missouri 63026. UniGroup agent/owners, including but not limited to Johnson Storage, coordinate the movement of household goods for clients relocating their homes.

8.      Prior to her hire by Defendant to work for it directly, Plaintiff had worked at Defendant's UniGroup Inc. facility in Fenton, Missouri from August 29, 2016 to March 10, 2017.

9.      Prior to working at the UniGroup facility in Fenton, Missouri, Jacobs had roughly 25 years of transportation experience in both Domestic & International Transportation (Civilian and Military) with UniGroup and UniGroup agent/owners.

10.     In her work with UniGroup, Jacobs worked to ensure the personal effects and belongings of Defendant's military personnel clients were properly shipped to and from their homes and international military bases. Jacobs coordinated with local shipping companies and trucking companies within the UniGroup shipping network of receivers, ports, and overseas agents.

11.     On or around February 22, 2017, John Hiles ("Hiles"), Defendant's Vice President of Operations; and Don Hindman ("Hindman"), Defendant's Executive Vice President called and visited Plaintiff at the UniGroup facility in Fenton, Missouri, seeking to meet and interview her for a position with Johnson Storage.

12.     Hiles and Hindman sought to have Jacobs work for Johnson Storage directly rather than through UniGroup.  Defendant sought to draw on Plaintiff's years of experience in the transportation industry and with UniGroup as an "ITGBL Coordinator/Analyst" to create and establish Johnson Storage's own ITGBL Operations Department in order to begin accepting and servicing clients needing international military moving services beginning on May 15, 2017. Johnson Storage desired to bring this service in-house and replace its reliance on third-party vendors.

13.     The "ITGBL Coordinator/Analyst" position offered to Jacobs involved reporting to Hiles and Tina Heaney ("Heaney"), Johnson Storage's newly instated Director of Military Services.

14.     Jacobs negotiated for and agreed to an hourly rate of $29 per hour with Johnson Storage, signing an offer of employment with a start date of March 13, 2017.

15.     When Jacobs had originally performed the job duties of an ITGBL Coordinator/Analyst for UniGroup, she had been classified as a salaried exempt employee. When she was offered a position to work directly with Johnson Storage, the position offered was instead classified as hourly non-exempt (*i.e.*, eligible for overtime).

16.     As an ITGBL Coordinator/Analyst for Johnson Storage, Jacobs was to establish a home office and work from her home in O'Fallon, Missouri. Her work activities were to be managed and monitored remotely by Johnson Storage and Heaney in Colorado through e-mail, telephone, and Defendant's electronic timekeeping systems.

17.     As an hourly worker, Plaintiff was a non-exempt employee for purposes of the payment of overtime wages pursuant to the FLSA and MWHL.

18.     During the week of March 13, 2017, Jacobs was flown to Colorado by Johnson Storage to commence employment. Upon her arrival, Jacobs quickly discovered that she was the main member of Defendant's Military Move Operations Department, given her significant experience with the operations of international military moving services.

19.     By the time she departed from Colorado to return to Missouri, Jacobs learned that Johnson Storage lacked the information and resources she needed to take back to her home office in Missouri in order to perform the routine job duties of an ITGBL Coordinator/Analyst, including, *inter alia*, established trucking rates, agent contacts, port information, lift van access, and basic business practices.

20.     When Jacobs asked for such information and resources from Heaney, Jacobs discovered that the shipping rates negotiated by Heaney had included only ocean and overseas

services, but had excluded domestic services. Heaney expressed confusion and lack of knowledge regarding this critical job-related information, which was necessary for Johnson Storage to provide door-to-door international military moving services.

21.     Nonetheless, Defendant expected the Military Moving Department to be operational prior to May 15, 2017.  After her return to Missouri, Jacobs devoted substantial time and effort, at the request of Heaney, to establish the Military Moving Department, including but not limited to building vendor lists, finding ports and trucking companies, negotiating and analyzing rates, and finding overseas agents.

22.     From March 16, 2017 through March 31, 2017, Jacobs recorded 4.87 hours of overtime.  In April 2017, Heaney called Jacobs to discuss the recorded overtime.  Heaney stated the recorded overtime had been "noticed" and that Defendant Johnson Storage would let Heaney and Jacobs know when overtime was approved.

23.     Jacobs responded with a list of tasks that she performed that needed to be accomplished to commence operations, as directed, by May 15, 2017. While Heaney and Jacobs agreed that Jacobs was to do what she could to minimize overtime, Jacobs understood Heaney to be requesting that Jacobs work "off-the-clock" until the Military Moving Department was operational.

24.     In the performance of her work for Defendant, Plaintiff routinely worked more, and recorded less, overtime to accomplish all tasks assigned to and required of her by Heaney and Johnson Storage and repeatedly kept Johnson Storage and Heaney apprised of her work activities and the necessity of either splitting the work load or authorizing overtime.

25.     From April 1, 2017 to April 15, 2017, Jacobs only recorded 0.30 hours of overtime, despite Defendant's awareness that Jacobs had worked more unrecorded hours.

26.     From April 16, 2017 to April 30, 2017, Jacobs only recorded 2.40 hours of overtime, despite Defendant's awareness that Jacobs had worked additional unrecorded hours.

27.     On the afternoon of April 21, 2017 at 1:53 PM, Johnson Storage emailed Jacobs, stating, "Looks like you are right at 40 hours." As Jacobs obviously and openly continued to work, Johnson Storage was aware that Jacobs worked additional unrecorded hours, monitoring and managing Jacobs' activities.

28.     From May 1, 2017 through May 15, 2017, Jacobs recorded 9.27 hours of overtime.

29.     On May 12, 2017, Jacobs received additional instructions and notifications from Johnson Storage regarding working no more than forty (40) hours in a work week.

30.     From May 16, 2017 through May 31, 2017, Jacobs recorded 25.43 hours of overtime.

31.     On May 17, 2017, after commencing operations of Military Moving Department, Heaney called Jacobs to discuss the volume of business handled by Jacobs. Heaney stated that no additional workers would be added to the department until the profit margins had been ascertained.

32.     On May 22, 2017, Heaney again called to discuss overtime, work volume, and Jacobs' repeated requests for assistance. Heaney reiterated that that management of Johnson Storage would tell them how much overtime Jacobs was permitted to log.

33.     On May 23, 2017, Jacobs e-mailed Heaney to follow-up and explain the Military Moving Department's tasks to keep the Department functional and operational. In particular, Plaintiff complained to Defendant about routinely being assigned work in excess of forty (40) hours per week and being expected to record less overtime hours and receive less overtime pay.

34.     Defendant routinely expected and required Plaintiff to work more than forty (40) hours within a work week.

35.     Johnson Storage routinely monitored Heaney's management of the Military Moving Department including overtime worked by Jacobs and was aware that the tasks assigned to Plaintiff by Heaney could not be completed in less than forty (40) hours within a work week.

36.     No viable solutions were offered or enacted to reduce Jacobs' workload or responsibilities below forty (40) hours in a workweek. Suggestions were presented by Jacobs on areas that would help reduce the workload.  With no plan in place to reduce required hours on required tasks or to hire additional staff, Jacobs began recording all overtime hours worked.

37.     From June 1, 2017 to June 15, 2017, Jacobs recorded 12.13 hours of overtime. From June 16, 2017 through June 30, 2017, Jacobs recorded 37.53 hours of overtime.

38.     On June 27, 2017, Jacobs emailed Heaney to indicate that the work volume she was expected and required to perform and/or manage remained well in excess of a single employee's capacity working only forty (40) hours in a work week.

39.     From July 1, 2017 through July 15, 2017, Jacobs recorded 17.13 hours of overtime.

40.     On July 6, 2017, Heaney called Jacobs to address overtime hour concerns. During this and previous conversations, Heaney acknowledged:

     a.   Johnson Storage management had told her to reduce Jacobs' overtime hours;

     b.   Johnson Storage management refused to add anyone to the Military Moving Department until 2018;

     c.   Johnson Storage had a history of working people to their breaking points; and

     d.   Heaney stated: "I know they want me to help because I am a salaried employee, but that is not going to happen."

41.     When Plaintiff directly asked Heaney if she was asking for Plaintiff to clock out and continue to work, Heaney replied: "I can't technically ask you to do that, but off the record, yes."

42.     In an effort to document her phone conversations, Plaintiff sent electronic mail to Heaney at 4:46 PM that same day, addressing the job expectations and responsibilities of the position. Specifically, Plaintiff concluded: "The only other thing that I could do is clock out and continue to do the work, but we already had a conversation about that."

43.     Contemporaneously, Heaney instructed Jacobs to source more shipping lanes, more agents, more destinations, and more points of origin. Heaney indicated that Johnson Storage had instructed her to increase military move volumes.

44.     From July 16, 2017 through July 31, 2017, Jacobs recorded 20.40 hours of overtime.

45.     In a conversation with Heaney about work volume in late July or early August, Heaney stated that other companies routinely expected their employees to individually handle 500 moves per year. Jacobs responded that UniGroup's goal for her in 2017 was to coordinate 400 moves per year with the assistance of multiple other employees on established shipping routes with established agents. Jacobs further indicated that since commencing operations at Johnson Storage, she had over 300 active moves in three (3) months, with no assistance from a trafficker while establishing new shipping routes, and new agents at Heaney's request. Heaney responded only that she had been given required department goals by Johnson Storage and specific instructions to reduce Jacobs' overtime payroll cost.

46.     From August 1, 2017 through August 15, 2017, Jacobs recorded 37.77 overtime hours.

47.     On or around August 7, 2017, Jacobs sent out quality control e-mails to military move clients serviced over the previous three months. Clients who responded to Jacobs' e-mail rated the service provide by Johnson Storage, by and through Jacobs, as excellent.

48.     On August 17, 2017, Heaney scheduled a "Mandatory Work Performance Meeting" call for 3:45 PM with Jacobs. Jacobs reasonably anticipated this call was a standard 180-day work evaluation. Accordingly, Jacobs prepared substantial notes on her accomplishments.

49.     When Jacobs got on the line, she discovered that Heaney had invited a representative of Human Resources, Merina Manandhar, to join the conversation.

50.      Heaney asked Jacobs to permit her to provide a list of items without interruption, promising an opportunity to respond. During the call, Heaney identified three concerns regarding Jacobs' job performance:

   a. The first concern identified by Heaney was Plaintiff's purported failure to address concerns raised by Heaney in early July about limiting overtime hours to ten (10) per pay period and re-evaluating Jacobs' workload in that, subsequent to the conversation, Jacobs had worked 17.13 overtime hours, 20.4 overtime hours, and 37.77 overtime hours in the next three pay periods, as required of her by Heaney.

   b. The second concern identified by Heaney was Jacobs' allegedly deficient customer service performance, in that Heaney had purportedly received three complaints from one of Defendant's vendors describing Jacobs as having "yelled," as "ranting and raving," and as "belligerent and unprofessional."

   c. The third concern identified by Heaney was Jacobs' allegedly untimely response to customer requests.

51.     Despite her promise to give Jacobs an opportunity to respond, Jacobs was not given an opportunity to respond before Heaney stated, "I have decided to terminate your employment as of today."

52.     The three concerns raised by Heaney were directly related to, and falsely and/or pretextually asserted in retaliation against, Jacobs' complaints of hours of work, work volume, and her refusal to work unrecorded overtime.

53.     On August 19, 2017, Plaintiff sent electronic mail to Hindman (*i.e*., Heaney's supervisor), complaining of unrealistic job duties and expectations, the inaccuracy of Defendant's timekeeping records, and unpaid hours work related to her having worked in excess of forty (40) hours per week without receiving full compensation.

54.     On August 24, 2017, at 4:00 PM, Jacobs received a call from Hindman, during which he admitted:

   a.   "I am not viewing this as termination for cause";

   b.   "I think you are a very qualified person";

   c.   Heaney "has not had a lot of management experience";

   d.   Heaney had informed him that the termination was for refusing to follow direction and insubordination; and

   e.   He had not conducted an independent investigation into the matter.

55.     During the call, Jacobs noted that the only order of Heaney that Jacobs recalled refusing to follow was the order to essentially falsify her hours worked in violation of federal and state wage and hour laws.

56.     In asserting her right to overtime compensation, Plaintiff reported and complained to Defendant that the time reporting system did not accurately reflect her hours worked and that she had been improperly denied pay for all hours worked.

57.     In asserting her right to overtime compensation, Plaintiff notified Defendant that she had conducted independent research into wage and hour laws and believed that the decision to terminate her was in retaliation for refusing to work uncompensated overtime hours.

58.     Prior to her termination and throughout her many years of industry experience, Plaintiff's performance and evaluations were very good, and she was regarded by Defendant and Defendant's clients as being both proficient and knowledgeable.

59.     The net effect of the pay policies and practices maintained and administered by Defendant, instituted and approved by its management, is that Defendant willfully failed to pay overtime compensation owed to Jacobs in order to reduce its own payroll costs. Defendant thus enjoy ill-gained profits at the expense of Plaintiff

**COUNT I**
**RETALIATION IN VIOLATION OF THE FLSA**

60.     Plaintiff incorporates by reference all preceding paragraphs, as if fully stated herein.

61.     Plaintiff engaged in protected activity under the FLSA, in that she repeatedly questioned the accuracy and propriety of Defendant's timekeeping records and pay practices, and asserted her right for unpaid overtime wages pursuant to the FLSA.

62.     There is a causal connection between Plaintiff's protected activity under the FLSA and Defendant's adverse employment action taken against Plaintiff in that:

   a.   There is a close temporal connection between the protected activity and adverse employment action;

b.  Defendant made direct statement of animus toward Plaintiff's protected

activities

c.  The reasons offered by Defendant for the adverse employment actions taken

against Plaintiff were false and pretextual; and

d.  Plaintiff was performing her job satisfactorily.

63.    As a direct and proximate result of Defendant's unlawful retaliation against

Plaintiff, Plaintiff has sustained damages, including, *inter alia*: lost wages and emotional distress.

64.    Defendant's actions were intentional, willful, knowing, wanton, and malicious, in

flagrant disregard of the rights of Plaintiff, thus entitling Plaintiff to an award of punitive damages.

WHEREFORE, on Count I of this Complaint, Plaintiff demands judgment against

Defendant and prays for: (1) a finding that Defendant wrongfully retaliated against and terminated

Plaintiff for engaging in protected activity under the FLSA; (2) an award of actual damages in an

amount to be proved at trial, including but not limited to back pay, front pay, and emotional distress

damages;[1] (3) an award of liquidated damages; (4) an award of punitive damages[2] to punish and

deter Defendant and others from like conduct; (5) attorney's fees, costs, pre-judgment interest, and

post-judgment interest; (6) reinstatement; and such other relief as the Court deems fair and

equitable.

---

[1] Plaintiff has a good-faith basis to seek emotional distress damages under the anti-retaliation provisions of the FLSA. *See, e.g., Broadus v. O.K. Indus., Inc.,* 238 F.3d 990, 992 (8th Cir. 2001) (affirming award under FLSA where jury was directed to consider any other damages sustained by plaintiff, including emotional distress and mental anguish); *Bogacki v. Buccaneers Ltd. P'ship*, 370 F. Supp. 2d 1201, 1206 (M.D. Fla. 2005) (allowing plaintiff to amend FLSA complaint to include damages for emotional distress).

[2] Plaintiff has a good-faith basis to seek punitive damages under the anti-retaliation provisions of the FLSA. The Eighth Circuit is silent as to whether punitive damages are allowed, and courts within the Eastern District of Missouri have reached contradictory conclusions. *Cf. Lewey v. Vi-Jon, Inc.*, 4:11CV1341 JAR, 2012 WL 1859031 (E.D. Mo. May 22, 2012) (finding the FLSA anti-retaliation provision remedy of legal relief encompasses punitive damages) *with Huang v. Gateway Hotel Holdings*, 520 F. Supp. 2d 1137, 1144 (E.D. Mo. 2007) (finding punitive damages are unavailable under the FLSA).

## COUNT II
## WRONGFUL DISCHARGE IN VIOLATION OF MISSOURI PUBLIC POLICY

65.     Plaintiff incorporates by reference all preceding paragraphs as if fully stated herein.

66.     Both federal and state public policy encourages lawful payment for all hours worked. *See* 29 U.S.C. § 202(a); § 290.505(1) RSMo.[3]

67.     Public policy also discourages an employer or agent of the employer from discharging or discriminating against any employee for exercising their rights under the FLSA. *See* 29 U.S.C. § 215(a)(3).

68.     Plaintiff repeatedly lodged internal complaints with Defendant about expected hours of work, expected job duties, and Defendant's request that she not record all hours worked.

69.     Defendant explicitly instructed Plaintiff to not record all hours worked.

70.     Defendant explicitly cited Plaintiff's recording of overtime hours for expected job duties as a basis for termination Plaintiff's employment.

71.     Defendant's termination of Plaintiff for complaining about its unlawful pay practices violates Missouri's public policy exception to the at-will employment doctrine. *See Fleshner v. Pepose Vision Institute, P.C.*, 304 S.W. 3d 92 (Mo. banc 2010), which held in pertinent part:

> This Court expressly adopts the following as the public-policy exception to the at-will employment doctrine: An at-will employee may not be terminated (1) for refusing to violate the law or any well-established and clear mandate of public policy . . . or (2) for reporting wrongdoing or violations of law to superiors or public authorities. If an employer terminates an employee for either reason, then the employee has a cause of action in tort for wrongful discharge based on the public-policy exception.

---

[3] Codification of Missouri Whistleblower's Protection Act, enacted and effective Aug. 28, 2017 at § 285.575, was not in effect at the time of alleged wrongful act - the termination of Jacobs – and by its own terms – states only that the "section [was] intended to codify existing common law exceptions to the at-will employment doctrine and limit their future expansion by the courts" and "provide the exclusive remedy for any and all claims of unlawful employment practices" making no clear and explicit mention of retroactive effect, rendering it inapplicable to Johnson Storage's wrongful actions.

72.     Plaintiff's exercise of her rights under the FLSA and the MWHL, in furtherance of both federal and state public policy, was a contributing factor in Defendant's decision to terminate Plaintiff.

73.     There is a causal connection between the Plaintiff's exercise of her rights under the FLSA and the MWHL and the Defendant's decision to retaliate against and terminate the Plaintiff.

74.     As a direct and proximate result of Defendant's unlawful retaliation against Plaintiff in violation of clear mandates of public policy, Plaintiff is now suffering and will continue to suffer: pain and suffering, emotional distress, lost wages, loss of peace of mind, loss of benefits, loss of opportunity, damages from emotional distress, attorneys' fees and costs; all in amount yet to be determined.

75.     Defendant's treatment and actions towards Plaintiff were intentional, willful, knowing, wanton, and malicious, and in flagrant disregard of the rights of Plaintiff, thus entitling Plaintiff to an award of punitive damages.

WHEREFORE, on Count II of this Complaint, Plaintiff respectfully prays for judgment against Defendant as follows: (1) a finding that Defendant wrongfully terminated Plaintiff in violation of clear mandates of public policy; (2) an award of actual damages in an amount to be proved at trial, including but not limited to back pay, front pay, and emotional distress damages; (3) punitive damages to punish and deter Defendant and others from like conduct in the future; (4) costs, pre-judgment interest, and post-judgment interest; and such other relief as this Court deems fair and equitable.

## COUNT III
## FAILURE TO PAY OVERTIME IN
## VIOLATION OF THE FLSA

76.     Plaintiff incorporates by reference all preceding paragraphs, as if fully stated herein.

77.     At all times material herein, Plaintiff was entitled to the rights, protections, and benefits provided under the FLSA.

78.     The FLSA requires employers to pay non-exempt employees one and one-half times the regular rate of pay at which they are employed for all hours worked over forty hours per work week. 29 U.S.C. § 207.

79.     Defendant knew Plaintiff worked overtime hours for which she was not paid.

80.     Defendant failed to compensate Plaintiff for all overtime hours worked and in failing to pay Plaintiff for such hours also failed to pay overtime compensation at the statutorily prescribed rate of one-and-one-half times the regular rate of pay.

81.     Defendant further violated the FLSA by failing to keep accurate records of all hours worked by its employees, including Plaintiff.

82.     Defendant knew or should have known Plaintiff was a non-exempt employee working overtime and knowingly and willfully violated the FLSA by failing to pay Plaintiff overtime compensation for such unrecorded and/or under-reported hours for work as requested by Defendant.

83.     No good faith or objectively reasonable basis exists for Defendant to believe its conduct was not violative of the FLSA, subjecting Defendant to the imposition of liquidated damages.

WHEREFORE, on Count III of this Complaint, Plaintiff prays for relief and judgment against Defendant as follows: (1) judgment against Defendant for violation of the overtime wage

15

provisions of the FLSA; (2) an award of unpaid overtime wages; (3) determination that Defendant's FLSA violations were willful; (4) imposition of liquidated damages against Defendant; (5) an award of reasonable attorneys' fees and litigation costs incurred; (6) pre-judgment and post-judgment interest as provided by law; and such other relief as the Court deems fair and equitable.

<u>COUNT IV</u><br>
<u>FAILURE TO PAY OVERTIME IN VIOLATION OF THE MWHL</u>

84.      Plaintiff incorporates by reference the above stated paragraphs as if set forth fully herein.

85.      At all relevant times herein, Plaintiff has been entitled to the rights, protections, and benefits provided under the MWHL.

86.      The MWHL regulates, among other things, the payment of overtime wages by employers.

87.      During all times relevant to this action, Defendant was the "employer" of Plaintiff within the meaning of the MWHL.

88.      During all times relevant to this action, Plaintiff was Defendant's "employee" within the meaning of the MWHL.

89.      Pursuant to the MWHL, employees are entitled to be compensated at a rate of not less than one and on-half times the regular rate at which such employees are employed for all work performed in excess of forty hours in a workweek. § 290.505.1 RSMo.

90.      Defendant, pursuant to its policy and practice, violated the MWHL by refusing and failing to pay Plaintiff overtime wages required under Missouri law. § 290.505.1 RSMo.

91.      In the course of perpetrating these unlawful practices, Defendant has also failed to keep records of the hours worked each day and each workweek by its employees as required under

16

the MWHL. § 290.520 RSMo.

92.    Plaintiff is entitled to compensatory damages, in the form of unpaid overtime, in addition to an liquidated damages. § 290.527 RSMo.

93.    Plaintiff is entitled to an award of pre-judgment and post-judgment interest at the applicable legal rate.

94.    Defendant is further liable pursuant to § 290.527 RSMo. for Plaintiff's costs and reasonable attorneys' fees incurred in this action.

WHEREFORE, on Count IV of this Complaint, Plaintiff demands judgment against Defendants and prays for: (1) compensatory damages of unpaid overtime; (2) liquidated damages; (3) reasonable attorneys' fees and costs; (4) pre-judgment and post-judgment interest as provided by law; and  such other relief as the Court deems fair and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff requests a trial by jury on all issues in this case which are so triable.


Respectfully submitted,


By:        */s/ Kevin J. Dolley*
Kevin J. Dolley (E.D. Mo. #54132MO)
Jason M. Finkes (E.D. Mo #65903MO)
LAW OFFICES OF KEVIN J. DOLLEY, LLC
2726 S. Brentwood Blvd.
St. Louis, MO 63144
(314) 645-4100 (office)
(314) 736-6216 (fax)
kevin@dolleylaw.com
jason.finkes@dolleylaw.com

*Attorneys for Plaintiff Katherine Jacobs*